UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEALTHCARE JUSTICE COALITION CA CORP., a California Corporation,<br><br>    Plaintiff,<br>v.<br><br>AETNA, INC., a Connecticut Corporation; AETNA HEALTH OF CALIFORNIA, INC., a California Corporation; AETNA HEALTH & LIFE INSURANCE COMPANY, a Connecticut Corporation; AETNA LIFE INSURANCE COMPANY, a Connecticut Corporation; MERITAN HEALTH, INC., a New York Corporation; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No.: 2:24-cv-04681-CBM-RAOx<br><br>**ORDER RE: PLAINTIFF'S MOTION TO REMAND FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION [20]    [JS-6]** |

The matter before the Court is Plaintiff Healthcare Justice Coalition CA Corp.'s Motion to Remand the case from this Court back to Los Angeles County Superior Court for lack of federal subject matter jurisdiction. (Dkt. No. 20 ("Motion").)

## I. BACKGROUND

This is an action filed on April 24, 2024 in Los Angeles Superior Court by Plaintiff Healthcare Justice Coalition CA Corp. ("Healthcare Justice") against Defendants (collectively referred to as "Aetna")[1] to recover the alleged under-payment or lack of payment for emergency medical services that were rendered to subscribers and plan members of Defendants' healthcare service plans. Plaintiff is an organization dedicated to obtaining full payment from insurance companies for emergency medical services. (Compl., ¶ 5.) Defendants provide insurance coverage to patients seen by medical service providers at facilities located in central California. (*Id.*, ¶ 4.)

Plaintiff alleges the following facts: Insurance companies like Aetna regularly enter into contracts with medical service providers in which providers agree to "accept less [from the insurer] than what they bill for services provided to patients in exchange for various benefits of being contracted, including being listed on insurers' in-network rosters," the "right to prompt and timely payment of claims, the ability to submit electronic bills and communications to the payor, and certainty over the rates of payment [they] will receive for their services." (*Id.*, ¶ 6.) In contrast, "out-of-network" providers (those who are *not* contracted with a particular insurer) can charge that insurer's subscribers the providers' regular rates, and an insurer will typically pay out less on these claims and let the subscriber make up the

---

[1] Defendants are Aetna, Inc., Aetna Health of California, Inc., Aetna Health & Life Insurance Company, Aetna Life Insurance Company, and Meritan Health, Inc. (Dkt. No. 1-1 ("Complaint"), ¶ 2.) In the Notice of Removal, Defendants clarify that it believes "Meritain Health, Inc." is the correct defendant entity, erroneously named in the Complaint as "Meritan Health, Inc." (Dkt. No. 1 at 2.)

difference via a steeper coinsurance payment. (*Id.*, ¶ 7.) Plaintiff "does business with emergency medicine practice groups," and these healthcare service providers ("Providers") who rendered lifesaving, emergency healthcare services to members of Defendants' insurance plans "have assigned their claims and rights to payments from insurers and payors to Plaintiff." (*Id.*, ¶¶ 3-4.) None of the Providers had written contracts with [Aetna]" and were thus out-of-network providers. (*Id.*, ¶ 9.) Under the Knox-Keene Act, which "established required levels of payment for emergency and certain post-emergency stabilization care for out-of-network providers," Aetna was "required to . . . pay . . . for emergency services based upon the reasonable value of the emergency services provided by the Providers"—yet, Aetna "either failed to pay anything at all to the Providers . . . or paid much less than the reasonable value and less than the *quantum meruit* value of those services." (*Id.* at ¶¶ 8-10.)

Plaintiff brings the following state law claims: (1) common law breach of implied contract; (2) common law open book accounting; and (3) a violation of the Unfair Competition Law (Cal. Bus. & Prof. §§ 17200 *et seq.*). Plaintiff "explicitly cho[se] not to pursue any rights or causes of action based on" the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. §§ 1001 *et seq.*) or the Medicare Act (42 U.S.C. §§ 1395 *et seq.*). (Compl., ¶ 18.) Instead, Plaintiff pursues its claims "based on its assignment of the emergency physicians' direct right to reimbursement from [the] defendants," and "does **not** seek to enforce the contractual rights of AETNA's members or subscribers through their members' insurance contracts . . . or other written insurance agreements or instruments, nor does [Plaintiff] assert any rights to payment by or from defendants, based upon such insurance contracts . . . or other written insurance agreements or instruments." (*Id.*, ¶ 19 (emphasis in original).)

On June 5, 2024, Defendants removed the case to federal court on the grounds that the Plaintiff's causes of action were preempted in whole or in part by ERISA,

3

thus giving the district court both federal question jurisdiction and supplemental jurisdiction over any remaining causes of action arising from state law. (Dkt. No. 1 ("Notice of Removal"), ¶¶ 6-7.) On July 17, 2024, Plaintiff filed a Motion to Remand. (Dkt. 20.) On August 20, 2024, Defendants filed an opposition, and on August 27, 2024, Plaintiff filed its reply.[2] (Dkt. Nos. 23, 24.)

## II. STATEMENT OF THE LAW

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Pursuant to 28 U.S.C. § 1331, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law for purposes of § 1331 when a federal question appears on the face of the complaint." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020) (citing *Caterpillar*, 482 U.S. at 392). However, complete preemption is "an exception to the well-pleaded complaint rule." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 686 (9th Cir. 2020) (citing *City of Oakland*, 969 F.3d at 905). Complete preemption applies if a well-pleaded complaint establishes a state-law cause of action but "requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal. et al.*, 463 U.S. 1, 13 (1983); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (complete preemption is invoked when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'") (citing *Metropolitan Life Ins. Co v. Taylor*, 481 U.S. at 65).

---

[2] Plaintiff's reply brief did not comply with the Court's standing order, which limits the length of reply briefs to ten (10) pages. However, the reply has been considered by the Court for purposes of the Motion.

However, there is a "strong presumption against removal jurisdiction," and "the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation omitted); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

### III. DISCUSSION

"There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in ERISA § 502(a), 29 U.S.C. § 1132(a)." *Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011) (brackets omitted). "Conflict preemption under ERISA § 502(a), however, also confers federal subject matter jurisdiction for claims that nominally arise under state law." *Id.* Defendants here assert that this Court has jurisdiction over Plaintiff's claims under 29 U.S.C. 1132(e)(1) and (f), and that Plaintiff's claims are preempted under 29 U.S.C. § 1132(a). (Dkt. No. 1, ¶¶ 21-22.) 29 U.S.C. § 1132(a)(1)(B) states:

> "A civil action may be brought—(1) by a participant or beneficiary—(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In *Aetna Health Inc. v. Davila*, the Supreme Court developed a two-prong test to determine whether a state law cause of action is preempted by § 502(a) of ERISA:

> (1) if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B); and (2) where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted…"

542 U.S. 200, 210 (2004). This two-prong test is conjunctive—a state-law cause of action can only be preempted by ERISA if both prongs of the test are satisfied. *See Fossen*, 660 F.3d at 1108.

5

### A. Prong One

ERISA provides a right of action to plan participants, beneficiaries, the Secretary of Labor, employers of participants, and employee organizations with an obligation to contribute to a multiemployer plan. 29 U.S.C. § 1132(a). Participants and beneficiaries also have the power to assign their rights to benefits under an ERISA plan to their healthcare providers, thus giving providers the right to act in the place of the plan participant. *See S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of California*, 90 F.4th 953, 960 (9th Cir. 2024) (recognizing derivative authority to sue under ERISA where patients assigned provider "the right to sue for non-payment of benefits under [ERISA]"); *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) ("ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider"); *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 547 (6th Cir. 2016) ("there is now a broad consensus that when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)") (internal quotations omitted).

Here, Healthcare Justice does not fall under any of the categories of persons "empowered to bring a civil action" under 29 U.S.C. 1132(a), nor is it a healthcare provider to whom patients have assigned their ERISA plan rights. Plaintiff is an organization that appears to have "aggregated [several] unrelated claims from numerous different health facilities, akin to a bill-collector." *S. Coast Specialty Surgery Ctr.*, 90 F.4th at 962. Thus, Plaintiff does not have direct or derivative rights to bring claims under ERISA. Defendants argue that the first prong does not focus on whether *Plaintiff* lacks standing to sue under ERISA, but instead asks whether "***an individual, at some point in time***, could have brought this claim under ERISA." (Dkt. No. 23 at 13 (quoting *Davila*, 542 U.S. at 210).) But the Ninth Circuit has interpreted *Davila* as asking whether "the *litigant* could have brought

the claim under ERISA's civil enforcement provision," and Defendants cite to no authority to the contrary. *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 878 (9th Cir. 2017) (emphasis added) (finding providers could not bring ERISA claims but noting that its conclusions "do not necessarily preclude Providers from contesting the recoupment and offsetting actions they dispute," as "[a]ny state law claims for breach of the provider agreements could not have been brought under ERISA and would have an independent legal basis" that "would not be preempted by ERISA"). Plaintiff here could not have brought claims pursuant to ERISA.

More importantly, the Complaint does not allege that Plaintiff seeks to enforce rights created by ERISA plans at all. Indeed, the Complaint spends several paragraphs alleging that Plaintiff's claims are solely based on *independent, individual* rights of the Providers separate from any ERISA derivative rights the Providers may have obtained from patients, and expressly disclaiming "any intent to assert, in this action, any derivative right to benefits from any ERISA-governed plan, any Medicare Advantage plan or any delegee of such Medicare Advantage Plan." (Compl., ¶¶ 17-20.) Defendants' assertion that "Plaintiff is a double assignee" and "its authority to recover benefits originates from the ERISA-plan beneficiary" (Dkt. No. 23 at 14) is unsupported by the allegations in the Complaint. Nor have Defendants submitted evidence establishing that Plaintiff is a double assignee. Defendants "bear[] the burden of proving the existence of jurisdictional facts." *Roohipour v. ILWU-PMA Welfare Plan*, 2020 WL 472921, at *4 (C.D. Cal. Jan. 28, 2020) (granting motion to remand where defendants failed to mount sufficient evidence that an assignment of rights from an ERISA plan beneficiary to the plaintiffs had occurred). "[A]bsent evidence of an assignment to establish complete preemption removal over a third-party provider's state-law claims, Defendant[s] cannot satisfy the first prong of the *Davila* test." *Id*. Even if such assignment occurred, the Complaint is clear that Plaintiff's claims are solely based

7

1  on the Providers' independent relationships with Defendants. The Ninth Circuit has
2  found that such claims are not preempted by ERISA. *See Cath. Healthcare W.-Bay
3  Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008)
4  (finding district court lacked jurisdiction where ERISA preemption did not apply
5  because "[a]lthough St. Mary's could have brought an ERISA claim derivatively as
6  an assignee, the Complaint does not assert a derivative claim" and instead "asserts
7  claims based on a direct contractual relationship that arose between St. Mary's and
8  Seafarers").

9  Therefore, Defendants have not met their burden to show that prong one of
10 the *Davila* test is met.

11 **B.     Prong Two**

12 Because Defendants fail to make a showing under prong one, the Court need
13 not reach prong two. However, to be thorough, the Court analyzes prong two below.

14 Plaintiff argues that the second prong of the *Davila* test is met because
15 Plaintiff has eschewed pursuing any entitlement to ERISA benefits and because
16 Plaintiff's theory of liability is based on state law rights and obligations (both
17 common law and California statutory) that exist independent of ERISA. (Mot. at
18 17–19.) Defendants argue that "the only legal obligations implicated by Plaintiff's
19 allegations arise from Aetna's duties and obligations to its members under their
20 ERISA-governed health benefit plans" because "whether Aetna paid the proper
21 amount is dictated directly and exclusively by the terms of the patient's benefit
22 plan." (Dkt. No. 23 at 16–17.) Defendants cite *Cleghorn v. Blue Shield of Cal.*,
23 408 F.3d 1222, 1226 (9th Cir. 2005) in support of their position.

24 In *Cleghorn v. Blue Shield of California*, Cleghorn was a member of a Blue
25 Shield program through his employer that received emergency medical treatment
26 he believed would be covered under his plan. *Cleghorn v. Blue Shield of California*,
27 408 F. 3d 1222, 1223 (2005). When Cleghorn's claim was denied, he filed state
28 law claims against Blue Shield, alleging the insurer had violated the UCL and the

8

Consumer Legal Remedies Act ("CLRA"). *Id*. at 1224. Blue Shield removed the action to federal court on the grounds that the plan at issue in the case was governed by ERISA and therefore subject to preemption. *Id.* Despite amending his original complaint to remove mentions to individual claims for damages under the CLRA—an amendment Cleghorn believed removed any implications of ERISA from his complaint—the Ninth Circuit affirmed the district court's denial of his motion to remand because:

> the only factual basis for relief pleaded in Cleghorn's complaint is the refusal of Blue Shield to reimburse him for the emergency medical care he received. Any duty or liability that Blue Shield had to reimburse him 'would exist here only because of [Blue Shield's] administration of ERISA-regulated benefit plans.'

*Id*. at 1226 (*quoting Davila*, 542 U.S. at 213).

Here, Plaintiff does not allege claims for recovery of ERISA benefits. It alleges claims that "arise out of the interactions of [the] Providers with [Defendants]" which resulted in rights that "belonged to and were owned by the Providers . . . in their own individual and proper capacities and were not derivative of the contractual or other rights of the Providers' patients." (*Id*., ¶ 19.) The Complaint also alleges facts about Defendants' prior "custom and practice of claims submission and [] payment that had historically transpired between the Providers and [Defendants]." (*Id*., ¶¶ 48, 56.) Finally, the Complaint alleges that Defendants used data analytics firms or vendors that depreciated the value of Providers' claims to justify "flawed, unfair, collusive, and/or fraudulent rates." (*Id*., ¶¶ 32-33.)

*Cleghorn* is thus inapposite to this case because *Cleghorn* involved rights that existed under ERISA. Where providers' claims are based on independent legal duties of insurers to provide reimbursement, the Ninth Circuit has held that those claims are not preempted by section 502(a) of ERISA. *See, e.g.*, *Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th

Cir. 1999) (affirming district court's ruling that providers' claims did not fall within ERISA's enforcement provision because "although beneficiaries of ERISA-covered plans have assigned their rights to reimbursement to the Providers, the Providers are asserting state law claims arising out of separate agreements for the provision of goods and services"); *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 978 (9th Cir. 2007) (holding Federal Employee Health Benefits Act did not preempt plaintiff's third-party claims for damages based on ERISA case law stating the same); *Emergency Grp. of Arizona Pro. Corp. v. United Healthcare, Inc.*, 838 F. App'x 299, 300 (9th Cir. 2021) (reversing and remanding with instructions to remand to state court because providers "assert[ing] legal duties arising under an implied-in-fact contract based on a course of dealing between the parties" had claims and rights that "would exist whether or not an ERISA plan existed and thus are independent from the legal obligations imposed by the ERISA plans") (internal quotations omitted); *Cath. Healthcare*, 321 F. App'x at 564 (reversing and remanding where none of plaintiff's claims "rest on the assignment of benefits under and ERISA plan" and instead were "involve[d] a contract and representations made between a third party provider and a plan—a relationship that is not governed by ERISA").[3]

Defendants' argument that reimbursement rates are determined by the terms of ERISA plans (Dkt. No. 23 at 17; Dkt. No. 23-1 ("Adinolfi Decl."), ¶ 13) is unpersuasive. Plaintiff identifies independent duties, that do not rely on the terms of any ERISA plans, for its claims that Defendants owed the Providers more than the reimbursement Providers received. (Compl., ¶¶ 19, 48, 56, 32-33.) Further, "[w]here the meaning of a term in the Plan is not subject to dispute, the bare fact

---

[3] *See also Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 236 (3d Cir. 2020) (collecting cases indicating that "the Courts of Appeals have overwhelmingly held that claims akin to [the plaintiff's] are not expressly preempted because, as pleaded, they arise out of a relationship ERISA did not intend to govern at all").

that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." *Anesthesia Care Assocs.*, 187 F.3d at 1051. Defendants' cites to other cases are inapposite because those cases involved claims where either providers attempted to recover payment based on an assignment of benefits from their patients, or patients themselves claimed insurers owed them reimbursement.[4] As pleaded in the Complaint—which, absent other evidence, the Court must take as true—Plaintiff is not bringing suit as a "double assignee" of benefits that were at one point held by ERISA beneficiaries.

Therefore, Defendants have not met their burden to show that prong two of the *Davila* test is met.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion to Remand is **GRANTED**.

**IT IS SO ORDERED.**

DATED: OCTOBER 10, 2024.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[4] *See Sagebrush LLC v. Cigna Health & Life Ins. Co.*, 2024 WL 2152458 (C.D. Cal. May 13, 2024) (denying motion to remand where plaintiff "conceded that it 'obtained assignment of benefits from at least one of the at-issue patients'" and plaintiff's UCL claim was "entirely dependent on the existence of ERISA-regulated plans"); *Sanjiv Goel, M.D., Inc. v. United Healthcare Servs., Inc.*, 2024 WL 1361800 (C.D. Cal. Mar. 29, 2024) (denying motion to remand where plaintiff alleged "no . . . additional contract" between provider and insurer claims and thus claims "would not exist but-for the ERISA plan between the underlying patient and Defendant"); *Leonard v. MetLife Ins. Co.*, 2013 WL 12210177 (C.D. Cal. Feb. 25, 2013) (denying motion to remand where plaintiff sought reimbursement from insurer based on benefits under her ERISA plan); *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC*, 2015 WL 5009093, at *5 (E.D. Cal. Aug. 20, 2015) (denying motion to remand after finding assignment of benefits from patient occurred, based on evidence submitted by defendant) (internal quotations omitted).